UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WATCHHILL CONSULTANTS, LLC, the estate of
MARTIN ROTHMAN, AARON SELIGSON, MARC
WOLFE, and MEHRAN BASSALI,

                        Plaintiffs,          **REPORT AND**
                                                         **RECOMMENDATION**
         -against-                   CV 21-2512 (DG)(AYS)

ACE USE INSURANCE COMPANY, ASPEN
SPECIALTY INSURANCE COMPANY, THE
BURLINGTON INSURANCE COMPANY, CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON
SUBSCRIBING TO CERTIFICATE NOS.
GL2015C0000002-040946 & GL2016C0000003-040946,
CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO CERTIFICATE NO.
GL2016C0000003-040947, LEXINGTON INSURANCE
COMPANY, ALLIED WORLD ASSURANCE
COMPANY, JAMES RIVER INSURANCE COMPANY,
and PRAETORIAN INSURANCE COMPANY,

                        Defendants.
-------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Diane Gujarati, is Defendant James River Insurance Company's motion to dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose the motion. For the following reasons, this Court respectfully recommends that Defendant's motion be granted in part and denied in part.

BACKGROUND

       The facts set forth below are drawn from Plaintiffs' Complaint and the attachments thereto. They are construed, as required in the context of the present motion, in Plaintiffs' favor.

       This action arises out of the filing of a putative class-action lawsuit commenced in July 2019 in State of Connecticut Superior Court, Case No. HHD-CV-19-6115255-S (the

1

"Underlying Action"), in which the putative lead plaintiffs allege, inter alia, that they suffered bodily injury at a four-building housing complex, known as Barbour Gardens (the "Premises"), located in Hartford, Connecticut. (Compl. ¶ 2.) Adar Hartford Realty ("Adar"), and certain of its members, including Plaintiffs herein, were named as defendants in the Underlying Action. (Id. ¶¶ 1-2.)

The Defendant insurance companies herein (the "Insurers" or "Defendants") all issued various commercial general liability, excess and umbrella insurance policies to Adar, providing coverage to Adar subject to each policy's terms. (Id. ¶ 25.) Each of the insurance policies provides coverage for Adar as the named insured and each of the members of Adar qualify as an insured under each policy. (Id. ¶¶ 26-27.) Each of the policies issued covers, among other things, those sums that an insured is legally obligated to pay as damages because of "bodily injury" or "property damage," as those terms are defined in each policy. (Id. ¶ 28.) Each of the policies require the respective defendant Insurer issuing the policy to defend its insureds in connection with claims that are potentially covered under each policy. (Id. ¶ 29.) Specific to the within motion, James River Insurance Company ("James River") first issued Commercial General Liability Policy Number 00077921-0 to Adar, effective from June 20, 2017 to June 20, 2018. (Def. Not. of Mot. Ex. C.) James River also issued Commercial General Liability Policy Number 00092830-3 to Adar, effective June 17, 2019 to September 17, 2019. (Def. Not. of Mot. Ex. B.) The Court will refer to the two James River insurance policies herein as the "Policies."

On or about July 23, 2019, Plaintiffs herein were named as defendants in the Underlying Action. (Id. ¶ 30.) The Underlying Action alleges that Plaintiffs herein are liable for injuries incurred by residents at the Premises, including, but not limited to, physical injuries, emotional

2

distress, and loss of use of property. (Id. ¶¶ 32-33.) Specifically, the complaint in the Underlying Action (the "Class Action Complaint") alleges as follows:

- Barbour Gardens is a "project-based Section 8" complex intended to provide safe, decent, and sanitary housing to low-income families;

- ADAR is a domestic limited liability company, made up of Plaintiffs herein as well as other unnamed individuals and entities, who purchased Barbour Gardens in 2004;

- Since its purchase, ADAR and its members have ignored their legal obligation to maintain the Premises, allowing conditions to deteriorate into a public health emergency;

- The conditions at Barbour Gardens include electrical problems, heat problems, ceiling leaks, broken and leaking kitchen and bathroom fixtures, broken and malfunctioning windows, soft and rotting flooring, moisture incursion, sewage backup, hazardous air quality, and infestations of toxigenic mold species, bacteria, fungi, dust mites, mice and bedbugs such that the Premises are defective, dangerous and hazardous to their health and safety;

- Due to the unlivable conditions at the Premises, the residents were directed to find new places to live;

- Injuries and damages alleged to have occurred include:
    - Physical injuries from the effects of living in housing polluted by fungi, mold, dust, mildew, dust mites, and bacterial exposure;
    - Emotional distress from living in unsafe and unlivable conditions;
    - Loss of families' household belongings as a result of water damage; and,
    - Constructive eviction.

(Class Action Complaint, annexed to Compl. at Ex. A, and 2d Am. Class Action Complaint, annexed to Def. Not. of Mot. at Ex. D.)

Plaintiffs herein provided notice of the Underlying Action to all defendant Insurers. (Compl. ¶ 34.) The Insurers have not and are not providing defenses for Plaintiffs in the Underlying Action. (Id. ¶ 35.)

Plaintiffs commenced the within action on May 5, 2021, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs seek a declaratory judgment that Defendants are obligated to defend and indemnify them in connection with the Underlying Action, as well as damages. Certain Defendants – Lexington Insurance Company, Allied World Assurance Company, and Praetorian Insurance Company – have been terminated from this action by voluntary dismissal. (Docket Entry ("DE") [68], [70], [81].) The remaining Defendants, with the exception of James River, have all filed Answers to Plaintiffs' Complaint. (DE [55], [60], [67], [104].) James River now seeks to dismiss Plaintiffs' Complaint, as alleged against it, for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose the motion.

## DISCUSSION

I.    Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general

4

rule, the Court is required to accept all of the factual allegations in the Complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

While the facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Applying these principles here, the Court has considered the documents annexed to Plaintiff's Complaint and Defendant's motion to dismiss in rendering this Report and Recommendation.

II.   <u>New York Insurance Law Principles</u>[1]

"Under New York law, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" <u>RSUI Indemn. Co. v. RCG Grp. (USA)</u>, 890 F. Supp. 2d 315, 323 (S.D.N.Y. 2012) (quoting <u>Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.</u>, 472 F.3d 33, 42 (2d Cir. 2006)) (additional citations omitted). "Where, as here, an insurer 'claims that an exclusion in the policy applies to an otherwise covered loss,' the 'insurer bears the burden of proof' to demonstrate that the exclusion applies." <u>RSUI</u>, 890 F. Supp. 2d at 325 (quoting <u>Morgan Stanley Grp., Inc. v. New England Ins. Co.</u>, 225 F.3d 270, 276 n.1 (2d Cir. 2000)). To do so, the insurer "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." <u>RSUI</u>, 890 F. Supp. 2d at 325 (quoting <u>Inc. Vill. of Cedarhurst v. Hanover Ins. Co.</u>, 89 N.Y.2d 293, 298 (1996)). "Policy exclusions 'are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.'" <u>RSUI</u>, 890 F. Supp. 2d at 325 (quoting <u>Inc. Vill. of Cedarhurst</u>, 89 N.Y.2d at 298.) The interpretation of a contract "is a matter of law for the court to decide." <u>Int'l Multifoods Corp. v. Commercial Union Ins. Co.</u>, 309 F.3d 76, 83 (2d Cir. 2002).

Balanced against the foregoing is the insurer's duty to defend, which is "exceedingly broad" under New York law. <u>Euchner-USA, Inc. v. Hartford Cas. Ins. Co.</u>, 754 F.3d 136, 140 (2d Cir. 2014). The duty to defend is "triggered by the allegations contained in the underlying complaint" and typically requires the court to compare the allegations in the underlying

---

[1] While James River states in its memorandum of law in support of its motion that this case presents a potential choice of law issue since the Underlying Action was filed in Connecticut, both parties apply New York law. Moreover, as James River points out, the law appears to be the same under both New York and Connecticut law. Accordingly, this Court will apply New York law herein.

complaint with the terms of the insurance policy. LM Ins. Corp. v. Fed. Ins. Co., 585 F. Supp. 3d 493, 499 (S.D.N.Y. 2022) (citations omitted). The duty to defend "is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310 (1984). Rather, the insurer's duty to defend "rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." Seaboard Sur. Co., 64 N.Y.2d at 310 (citations omitted). As long as the claims asserted against the insured "may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." Seaboard Sur. Co., 64 N.Y.2d at 310 (citation omitted).

### III. James River's Grounds for Dismissal

James River seeks to dismiss Plaintiff's breach of contract claim, as alleged against it, based on the following grounds: (1) the Policies' Claims in Progress Exclusion bars coverage because the alleged damages and injuries commenced before the initial inception date; (2) the Underlying Action does not trigger coverage under the Policies because the plaintiffs therein do not allege injury or damage caused by an "occurrence" or "personal and advertising injury;" and, (3) even if the Underlying Action triggers coverage under the Policies, the Expected or Intended Injury Exclusion, the Knowing Violation Exclusion and the Fiduciary Exclusion bar coverage. (Def. Mem. of Law 1.) James River also seeks to dismiss Plaintiff's clam for breach of the implied covenant of good faith and fair dealing on the ground that since there is no coverage under the Policies, the extra-contractual claim fails as a matter of law. (Id.) Plaintiff opposes the motion on all grounds.

  A.  <u>The Claims in Progress Exclusion</u>

    Pursuant to the Policies, the Claim(s) in Progress Exclusion states that the Policies do not apply to:

> "bodily injury", "personal and advertising injury" or "property damage" which begins or takes place before the inception date of coverage, whether such "bodily injury", "personal and advertising injury" or "property damage" is known to an insured, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury", "personal and advertising injury" or "property damage" may be or may involve a continuous or repeated exposure to substantially the same general harm.

(Combined Policy Exclusions, Def. Ex. B, DE [80-3], at 42; Def. Ex. C, DE [80-4], at 40.)

The exclusion goes on to state that:

> All "property damage" to units of or within a single project or development, and arising from the same general type of harm, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such damage or injury may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm which also continues to take place (in the case of repeated exposure to substantially the same general harm) during the policy term.

(Def. Ex. B at 43; Def. Ex. C at 41.)

  Based on this language, James River argues that the coverage sought by Plaintiffs herein is barred because the injuries and damages complained of in the Underlying Action began prior to the Policies' inception dates. (Def. Mem. of Law 10-12.) In response, Plaintiffs argue that the Underlying Action is a putative class action that seeks to include unnamed class members who have experienced the same harm as the named plaintiffs within the three years prior to the filing of the Class Action Complaint, which is subsequent to the Policies' inception dates. (Pl. Mem. of Law in Opp'n 9.) Alternatively, Plaintiffs argue that even if the Claims in Progress Exclusion could arguably be applied to the "property damage" claims in the Underlying Action, they are inapplicable to the claims of "bodily injury." (<u>Id.</u> 9-10.)

8

James River cites to several cases in support of its argument that the Claims in Progress Exclusion bars coverage in the Underlying Action. However, only two of the cases cited are from New York – one state and one federal – and all but one of the cases determined that the exclusion applied on either a motion for default judgment or summary judgment, both of which present a very different procedural posture than the within action. The sole case to make such a finding on a motion to dismiss is from the New York Appellate Division, First Department, and consists of less than one page, with little to no explanation for its holding. See Lifelock, Inc. v. Certain Underwriters at Lloyd's, 45 N.Y.S.3d 78 (1st Dep't 2017) (affirming dismissal on the grounds that the underlying complaint "in its entirety" falls within the exclusion language).

As Plaintiffs point out, the Class Action Complaint includes all putative persons who live or have lived at Barbour Gardens during the three years prior to the filing of the complaint – i.e., from July 23, 2016 to July 23, 2019. The inception dates for the two James River Policies are June 20, 2017 and June 17, 2019. Accordingly, while the conditions alleged to exist at Barbour Gardens began as early as 2004, it is plausible that some of the claims for "bodily injury" alleged in the Underlying Action could fall within the scope of the Policies' coverage. The clear language of the Claims in Progress Exclusion bars coverage for any bodily injury claims that occur before the inception date, whether known or unknown to the insured, and even if such injury is ongoing or changes or is derived from a continuous harm. While it is clear that any claims for bodily injury that occurred prior to 2017 are barred, it is plausible that some putative class action plaintiffs could have incurred bodily injury between 2017 and 2019, which would fall within the scope of the insurance coverage. A plain reading of the exclusion demonstrates that it applies to claims, not the conditions that may cause the claim – despite what James River appears to argue.

Claims for "property damage," however, have a different outcome under the Claims in Progress Exclusion. The exclusion deems property damage that arises from the same general type of harm to have occurred at the time of damage to the first such unit. Based on the allegations of the Class Action Complaint, property damage has been ongoing at Barbour Gardens since 2004. Accordingly, any such claims for property damage are clearly excluded under the Claims in Progress Exclusion.

Based on the foregoing, this Court respectfully recommends that James River's motion to dismiss based on the Claims in Progress Exclusion be granted with respect to its duty to defend based on property damage claims but denied with respect to its duty to defend based on bodily injury claims.

B.     Coverage A

James River next argues that there is no duty to defend or indemnify because the Class Action Complaint does not trigger coverage under Coverage A because it does not allege facts constituting an "occurrence" under the Policies. (Def. Mem. of Law 12-13.) Under the Policies, Coverage A provides as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.     Insuring Agreement**
>
>   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> \* \* \*

10

   b.  This insurance applies to "bodily injury" and "property damage" only if:

     (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
     (2)  The "bodily injury" or "property damage" occurs during the policy period; and
     (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that such "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

**2.  Exclusions**

This insurance does not apply to:

   a.  **Expected or Intended Injury**

     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Def. Ex. B at 6-7; Def. Ex. C at 5-6.) An "occurrence" is defined under the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Def. Ex. B at 19; Def. Ex. C. at 18.) The Policies do not define the term "accident."

  According to James River, the Underlying Action "arises out of illegal[], predatory slum lord conduct, not an accident," therefore failing to trigger coverage under Coverage A. (Def. Mem. of Law 14.) While James River is correct that various state and federal cases have found no duty to defend or indemnify where an insured's intentional or fraudulent conduct caused the

11

harm alleged, see e.g., Allstate Vehicle & Prop. Ins. Co. v. Mars, 533 F. Supp. 3d 71, 78-80 (E.D.N.Y. 2021) (collecting cases), the Class Action Complaint in the Underlying Action alleges both intentional and negligent conduct on the part of Plaintiffs herein (defendants therein). James River basically argues that the Court should ignore the allegations of negligence and focus only on those alleging intentional conduct on Plaintiffs' part. This, the Court cannot do, particularly at this juncture when it is required to construe the factual allegations in the light most favorable to Plaintiffs.

As stated above, an insurer is obligated to defend an action if there are "any facts or grounds which bring the action within the protection purchased." Seaboard Sur. Co., 64 N.Y.2d at 310. The factual allegations of the Class Action Complaint, while in part alleging intentional conduct, also clearly allege negligence, which triggers coverage under Coverage A of the Policies. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss be denied with respect to this ground.

  C. Coverage B

James River's third argument in support of dismissal is that the Underlying Action does not allege covered "personal and advertising injury" under Coverage B. (Def. Mem. of Law 15.) Coverage B of the Policies provides as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . .

12

\* \* \*

    2.    **Exclusions**

This insurance does not apply to:

    a.    **Knowing Violation of Rights to Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(Def. Ex. B at 11; Def. Ex. C at 10.)

The Policies define "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses":

- a. False arrest, detention or imprisonment;
- b. Malicious prosecution;
- c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
- d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
- e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
- f. The use of another's advertising idea in your "advertisement"; or
- g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Def. Ex. B at 19; Def. Ex. C at 18.) James River argues that since the Class Action Complaint does not allege any of the foregoing defined torts, it is not obligated to defend or indemnify Plaintiffs pursuant to Coverage B.

As Plaintiffs point out, however, James River is essentially arguing out of both sides of its proverbial mouth. On the one hand, James River argues that this action should be dismissed because Coverage A is not triggered by the negligence claims asserted in the Underlying Action because of the presence of allegations of intentional and fraudulent conduct. On the other, James River argues that Coverage B is not triggered because negligence claims do not fall within the

13

panopoly of claims listed in the definition of "personal and advertising injury." Such argument begs the question – when are claims covered by the within Policies? James River cannot have it both ways.

Moreover, the definition of "personal and advertising injury" specifically includes "injury, including consequential 'bodily injury' arising out of . . . the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies . . . ." (Def. Ex. B at 19; Def. Ex. C at 18.) The Class Action Complaint very clearly alleges that as a result of the actions of Plaintiffs herein, "residents are being displaced from their homes." (Class Action Compl. ¶ 35.) Such an allegation seems, to this Court, to trigger coverage under Coverage B. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss be denied with respect to this ground.

James River further argues that even if the Underlying Action triggers coverage under Coverage B, the Policies' Knowing Violation Exclusion, which bars coverage where the underlying complaint is based on intentional conduct, would apply. (Def. Mem. of Law 16.) However, as set forth above in connection with Coverage A, the Class Action Complaint alleges both intentional and negligent conduct on the part of Plaintiffs herein and specifically asserts causes of action based in negligence. James River essentially makes the same argument with respect to the Knowing Violations Exclusion that it makes in connection with Coverage A, which this Court has already recommended be rejected.

D.  The Fiduciary Exclusion

Finally, James River argues that the Policies' Fiduciary Exclusion bars coverage for the Underlying Action. (Def. Mem. of Law 17.) The Fiduciary Exclusion provides as follows:

This policy does not apply to any claim arising out of the:

14

    1.     Coercion, conversion or misappropriation of others' funds or property;
    2.     Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible; or
    3.     Any activities or operations performed in the capacity of a fiduciary.

(Def. Ex. B at 47; Def. Ex. C at 47.)

Acknowledging that there is no binding case law on point with respect to this issue, James River asserts that since "all of the claims" in the Underlying Action "arise out of the Plaintiffs' dishonest, fraudulent, and illegal acts," the exclusion is applicable to bar coverage. (Def. Mem. of Law 18.) However, as noted above in connection with James River's other arguments, while the Class Action Complaint certainly contains allegations of dishonest, fraudulent and illegal acts by Plaintiffs herein, it also contains clear allegations that Plaintiffs acted negligently, which renders the Fiduciary Exclusion inapplicable. To be relieved of its duty to defend, an insurer "is obligated to demonstrate that the allegations of the complaint cast that pleading <u>solely</u> and <u>entirely</u> within the policy exclusions, and further, that the allegations, <u>in toto</u>, are subject to no other interpretation." <u>Int'l Paper Co. v. Continental Cas. Co.</u>, 35 N.Y.2d 322, 325 (1974) (emphasis added). James River has failed to sustain this burden.

Based on the foregoing, this Court respectfully recommends that James River's motion to dismiss be denied with respect to this ground.

    E.     <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The Complaint herein alleges that James River, along with the other Defendants, breached the implied covenant of good faith and fair dealing by refusing to provide Plaintiffs with a defense in the Underlying Action. (Compl. ¶¶ 44-47.) James River seeks to dismiss this claim on the grounds that since Plaintiffs do not have a viable breach of contract claim, there can

be no claim for breach of the implied covenant. (Def. Mem. of Law 18-19.) Plaintiffs oppose the motion.

As this Court has rejected James River's arguments in support of dismissal of the breach of contract claim, the argument that the implied covenant claim should be dismissed due to a lack of a breach of contract claim holds no water. "[I]mplicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" Bi-Economy Market, Inc. v. Harleysville Ins. Co., 10 N.Y.3d 187 (2008) (quoting New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318 (1995)). Plaintiffs' Complaint alleges that Defendants refused to reasonably evaluate the Underlying Action for coverage, failed to acknowledge coverage in the Underlying Action, and failed to provide Plaintiffs with a defense in the Underlying Action. (Compl. ¶ 46.) At this stage of the litigation, where the Court is required to accept the allegations in the Complaint as true and to construe them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Accordingly, this Court respectfully recommends that James River's motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing be denied.

## RECOMMENDATION

Based on the foregoing, this Court respectfully recommends that Defendant James River's motion to dismiss be granted solely with respect to its duty to defend "property damage" claims pursuant to the Policies' Claims in Progress Exclusion. In all other respects, this Court recommends that James River's motion to dismiss be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
       February 15, 2023                              /s/    Anne. Y. Shields
                                                      ANNE Y. SHIELDS
                                                      United States Magistrate Judge