UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WATCHHILL CONSULTANTS, LLC, the estate of
MARTIN ROTHMAN, AARON SELIGSON, MARC
WOLFE, and MEHRAN BASSALI,

                        Plaintiffs,                              **REPORT AND**
                                                                               **RECOMMENDATION**
          -against-                                CV 21-2512 (DG)(AYS)

ACE USE INSURANCE COMPANY, ASPEN
SPECIALTY INSURANCE COMPANY, THE
BURLINGTON INSURANCE COMPANY, CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON
SUBSCRIBING TO CERTIFICATE NOS.
GL2015C0000002-040946 & GL2016C0000003-040946,
CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON SUBSCRIBING TO CERTIFICATE NO.
GL2016C0000003-040947, LEXINGTON INSURANCE
COMPANY, ALLIED WORLD ASSURANCE
COMPANY, JAMES RIVER INSURANCE COMPANY,
and PRAETORIAN INSURANCE COMPANY,

                        Defendants.
-------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This is a case in which Plaintiffs seek insurance coverage from each of the Defendant insurer entities. Presently before the Court, on referral from the Honorable Diane Gujarati, are the cross-motions for summary judgment by Plaintiffs and Defendant Burlington Insurance Company ("Burlington"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs argue that they are entitled to summary judgment declaring that Burlington has the duties to defend and indemnify them in connection with a state court lawsuit described below; Burlington seeks summary judgment declaring it has no such duties. For the following reasons, this Court respectfully recommends that Burlington's motion be granted and Plaintiffs' motion be denied.

BACKGROUND

I.      Documents Relied Upon

The facts set forth below are drawn from all pleadings, statements and documents submitted in connection with the pending motions, including the parties' statements pursuant to Rule 56.1 of the Local Civil Rules of this Court.

II.     The Underlying Action and this Lawsuit

This action was commenced seeking coverage from several insurance companies, including Burlington, for claims made against Plaintiffs in a putative class-action lawsuit. That lawsuit (the "Underlying Action") was commenced in July 2019 in State of Connecticut Superior Court, Case No. HHD-CV-19-6115255-S. (Docket Entry ("DE") [1-1].) The putative lead plaintiffs there allege injuries as a result of a variety of conditions alleged to exist at a four-building housing complex located in Hartford, Connecticut (the "Premises"), known as Barbour Gardens.

On or about July 23, 2019, ADAR Hartford Realty, LLC ("ADAR), and certain of its members, including Plaintiffs, were named as defendants in the Underlying Action. See generally complaint in the Underlying Action (the "Class Action Complaint") (annexed to Complaint herein as DE [1-1]). The Class Action Complaint identifies ADAR as a domestic limited liability company made up of, inter alia, Plaintiffs, who purchased Barbour Gardens in 2004. While Plaintiffs have been dismissed from the Underlying Action, they have incurred defense costs in connection therewith in excess of $260,000. (DE [150-2] ¶ 17.)

Barbour Gardens is stated to be a "project-based Section 8" complex intended to provide safe, decent, and sanitary housing to low-income families. (DE [1-1] ¶¶ 1.) ADAR and its members are alleged to have ignored their legal obligation to maintain the Premises, allowing

conditions to deteriorate into a public health emergency. The Underlying Action alleges that Plaintiffs are liable for injuries suffered by residents at the Premises, including, but not limited to, physical injuries, emotional distress, and loss of the use of their property. (Id. ¶¶ 32-33.)

The Class Action Complaint contains specific allegations regarding the dangerous living conditions at Barbour Gardens, as well as the failure of Plaintiffs to remediate those conditions. In support of their claims, the Class Action Complaint plaintiffs note numerous violations of housing laws. For example, plaintiffs there note that inspections conducted at Barbour Gardens in 2018 revealed that each apartment inspected was "infested with vermin" and most lacked functioning thermostats; many also lacked heat, plumbing or working stoves. (Id. ¶ 15.) The deplorable conditions outlined in the Class Action Complaint continued to exist in 2019 when, for example, sewage that backed up into the basement of one of the buildings was pumped into another building by the existing plumbing system. (Id. ¶ 23.) The Class Action Complaint further alleges that despite defendants' knowledge of deteriorating conditions at the housing complex, defendants (Plaintiffs here) not only failed to make necessary repairs, but also hired incompetent contractors who concealed problems "by patching holes, toxic mold stains, and other damage with paint, compound, or bleach – or even building fake walls – instead of addressing the root of the problem." (Id. ¶ 12(b).)

Among the numerous specific allegations regarding living conditions set forth in the Class Action Complaint are electrical problems, heating problems, ceiling leaks, broken and leaking kitchen and bathroom fixtures, broken and malfunctioning windows, soft and rotting flooring, moisture incursion, sewage backup, hazardous air quality, and infestations of toxigenic mold species, bacteria, fungi, dust mites, mice, and bedbugs. These conditions are alleged to have put the Class Action Complaint plaintiffs in the position of living in housing that is

defective, dangerous, and hazardous to their health and safety. The Class Action Complaint plaintiffs allege that due to the unlivable conditions at the Premises, the residents were directed to find new places to live – a task that is alleged to have been difficult, to say the least. As to damages, plaintiffs in the Underlying Action allege physical, economic and emotional injuries and constructive eviction from their homes. All of these injuries are clearly alleged to stem from the effects of living in the "unsafe" and "unlivable" conditions described above and in the Class Action Complaint. While the plaintiffs in the Class Action Complaint allege causes of action in addition to violation of the warranty of habitability, such as breach of their lease agreements, each and every cause of action is tied to the claim that the living conditions at Barbour Gardens were not fit for habitation.

Plaintiffs provided notice of the Underlying Action to all Defendant insurers. (Compl. ¶ 34.) All declined coverage. This lawsuit was commenced on May 5, 2021. The present motions concern only Defendant Burlington. All other named Defendants have settled. The Court turns now to discuss the policy of insurance issued by Burlington.

III.  The Burlington Policy

Burlington issued a Commercial General Liability ("CGL") policy of insurance to Plaintiffs with a policy period covering June 20, 2018 through June 20, 2019. (DE [150-4] (the "Policy").) Generally, the Policy covers sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage. (DE [150-4] at 18.) As relevant to the motions herein, Burlington agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" to which the Policy applies. (Id. at 23.) The Policy states that Burlington has both the right and duty to defend the insured against any suit seeking those damages. However, there is no duty to defend the insured against any suit

4

seeking damages for injuries to which the Policy does not apply. (Id.) Among the many exclusions to coverage is the exclusion that is dispositive of Burlington's motion. Namely, the "Habitability Exclusion." (Id. at 62.)

     A.     The Habitability Exclusion

The Habitability Exclusion excludes from coverage any claims, proceedings, or suits in any way "arising, in whole or in part, out of or resulting from the alleged or actual" excluded acts. (DE [150-4] at 62.) The exclusion is particular in its description of excluded acts, providing that Burlington shall have no duties with respect to all such excluded claims as follows:

1. Violation(s) of any law involving any duty to maintain any room, dwelling or premises in a "habitable or tenantable condition", including but not limited to any violation of the following:

    a.    Any civil code;

    b.    Any health and safety code;

    c.    Any Housing and Urban Development laws, ordinances or statutes;

    d.    Any rent stabilization laws, measures, ordinances or statutes;

    e.    Any federal, state or local Section 8 (government subsidized housing) program;

    f.    Americans with Disabilities Act; or

    g.    Any administrative rules, regulations or orders pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities.

2. Breach of any lease, rental agreement, contract, warranty or covenant, written or oral, involving any duty to maintain any room, dwelling or premises in a "habitable or tenantable condition".

3. Failure to respond to or comply with any federal, state, municipal or local order or directive to correct conditions at or near the property in violation of any federal, state, municipal or local statute, ordinance, rule, order or regulation.

5

4. Wrongful eviction from, wrongful entry into, or invasion of private right of occupancy of any room, dwelling or premises, either actual or constructive, arising, in whole or in part, out of subparagraphs (1), (2) or (3) above.

The Policy states further that the Habitability Exclusion applies:

1. Whether the insured may be liable as an owner, landlord, tenant, operator or property manager, or in any other capacity;

2. To any obligation to share damages with, indemnify or repay someone else who must pay damages because property damage or injury arising from any matter to which this exclusion applies; and

3. To claims against any insured alleging negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

(DE [150-4] at 62.)

The Habitability Exclusion adds to the Policy the definition of "habitable or tenantable condition" with particularity, stating that "'[h]abitable or tenantable condition' means that a room, dwelling, or premises is designed, constructed, controlled, managed, operated and/or maintained by any insured in such a manner as to allow occupants access, use, or enjoyment of any such room, dwelling, or premises." (Id.)

IV. The Motions

Before the Court are the cross-motions of Plaintiffs and Burlington. Burlington seeks a declaratory judgment that it is required neither to defend nor indemnify Plaintiffs in connection with the Underlying Action. Burlington characterizes the Class Action Complaint as alleging an intentional scheme "hatched well before the inception of" the Policy to intentionally neglect to maintain Barbour Gardens such that the conditions there were expected and intended by Plaintiffs. Such claims were therefore, according to Burlington, claims in progress and therefore not covered by the Policy. (DE [154] at 2.) Burlington also argues that Plaintiffs' knowing and intentional acts, as alleged in the Class Action Complaint, are simply not the type of fortuitous

6

acts that are covered by the type of CGL policy at issue here. Finally, Burlington argues that even if Plaintiff's failure to maintain Barbour Gardens can somehow be construed as not alleging intentional neglect, the conduct alleged in the Class Action Complaint falls squarely within both the Habitability and the Fungi and Bacteria Exclusions set forth in the Policy.

In support of their motion for summary judgment, Plaintiffs seek the opposite relief of that sought by Burlington, i.e., a declaratory judgment that Defendants are indeed obligated to defend and indemnify them in connection with the Underlying Action, as well as damages. Characterizing Burlington's construction of the Class Action Complaint as "cherry-picking," Plaintiffs note that the Class Action Complaint alleges that they have engaged in both intentional and non-intentional conduct, thereby defeating Burlington's argument regarding the coverage of only those acts that can be deemed fortuitous. (DE [155] at 3.) This argument relies, at least in part, upon this Court's previously issued Report and Recommendation recommending the denial of a co-defendant's motion to dismiss. (DE [110].) Plaintiffs also argue that the ongoing nature of the conduct in the Class Action Complaint alleges acts falling within the coverage period of the Policy. Plaintiffs disagree with Burlington's assessment of the Policy exclusions. According to Plaintiffs, this Court cannot hold that all of the causes of action in the Underlying Action would not exist "but for" the allegations that fall within the claimed exclusions, thereby defeating Burlington's exclusion arguments.

Having set forth the relevant facts and the parties' positions, the Court turns to the merits of the motions.

DISCUSSION

I.      Legal Standard on Motions for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

II.     New York Insurance Law Principles

The interpretation of a contract "is a matter of law for the court to decide." International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (quoting K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)) (additional citation omitted). When interpreting a contract of insurance, like any other contract, the court's interpretation must "give effect to the intent of the parties as expressed in the clear language of

8

the contract.'" RSUI Indemn. Co. v. RCG Grp. (USA), 890 F. Supp. 2d 315, 323 (S.D.N.Y. 2012) (quoting Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006)) (additional citations omitted) (additional citations omitted).

It is the insured that bears the burden, in the first instance, of showing that the claimed loss falls within the scope of the policy at issue. See Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F.Supp.2d 243, 253 (S.D.N.Y. 2013) (citing Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 218 (2002)). The insurer's duty to defend is "exceedingly broad" under New York law. Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 140 (2d Cir. 2014) (citation omitted). That duty is "triggered by the allegations contained in the underlying complaint" and typically requires the court to compare those allegations with the terms of the insurance policy. LM Ins. Corp. v. Fed. Ins. Co., 585 F. Supp. 3d 493, 499 (S.D.N.Y. 2022) (citations omitted).

The duty to defend "is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310 (1984). Rather, the insurer's duty to defend "rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." Id. at 310 (citations omitted). As long as the claims asserted against the insured "may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." Id. at 310-11 (citation omitted).

Where an insurer argues that a policy exclusion defeats a claimed duty to defend, it is the insurer that bears the burden of proof to show that the exclusion applies. RSUI, 890 F. Supp. 2d

9

at 325 (quoting Morgan Stanley Grp., Inc. v. New England Ins. Co., 225 F.3d 270, 276 n.1 (2d Cir. 2000)). To do so, the insurer "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." RSUI, 890 F. Supp. 2d at 325 (quoting Inc. Vill. of Cedarhurst v. Hanover Ins. Co., 89 N.Y.2d 293, 298 (1996)) (additional citation omitted). "Policy exclusions 'are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.'" RSUI, 890 F. Supp. 2d at 325 (quoting Inc. Vill. of Cedarhurst, 89 N.Y.2d at 298). As discussed in greater detail below, New York Courts have been clear in how to handle the issue of whether claims in a lawsuit for which coverage is sought arise out of those excluded by policy language fairly identical to that in the Policy at issue here.

With these principles and burdens in mind, the Court turns to the merits of the motions.

III.   Disposition of the Motions

The Class Action Complaint for which coverage is sought contains the factual allegations summarized above as well as statements as to harm inflicted on the proposed class representatives (alleged as the First Count). It also contains a count for Negligent Infliction of Emotional Distress (Count Two), Breach of the Warranty of Habitability (Count Three), Breach of Lease (Count Four), Negligence (Count Five), Recklessness (Count Six) and Unjust Enrichment (Count Seven). In support of their motion, Plaintiffs argue that these claims – which allege both negligent and intentional conduct – are plainly within the scope of coverage provided by the Policy and Burlington cannot sustain its burden as to Policy exclusions. Burlington's motion takes the opposite position, claiming Plaintiffs cannot show that there is coverage and that exclusions to the Policy plainly apply.

Even accepting Plaintiffs' characterization of the conduct alleged in the Class Action Complaint and coverage in the first instance (and their reliance on a Report and Recommendation on a motion to dismiss with respect to a different policy), this Court must nonetheless recommend that Burlington's motion for summary judgment be granted. This is because there is no question but that the Habitability Exclusion bars coverage.

The Policy is a contract of insurance that must be interpreted in accord with its plain language, to give effect to the parties' intent. See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co., 880 F.3d 64, 69 (2d Cir. 2018). This includes giving effect to the plain and ordinary meaning of policy exclusions. The Court recognizes that where there is ambiguity in a provision of exclusion, it is to be interpreted against the insurer. See Paraco Gas Corp. v. Ironshore Indem., Inc., No. 22-CV-5557, 2023 WL 4134661, at *4 (S.D.N.Y. June 22, 2023) (citing Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 353 (1978)). The Court also recognizes that while the burden of proving that an exclusion from coverage exists is high, it is certainly not insurmountable. Indeed, where, as here, the language of an exclusion is clear (and has been interpreted extensively by New York Courts), exclusion as a matter of law is appropriate in the context of a motion for summary judgment.

The Habitability Exclusion excludes injuries "arising, in whole or in part" out of or resulting from clearly enumerated acts. (DE [150-4] at 62.) The phrase "arising out of" has been held to be unambiguous, and is interpreted "broadly" to "mean 'originating from, incident to, or having connection'" with. Paraco Gas, 2023 WL 4134661 at *6 (quoting Lepore v. Hartford Fire Ins. Co., 374 F. Supp. 3d 334, 345 (S.D.N.Y. 2019), aff'd, 800 Fed. App'x 29 (2d Cir. 2020)). New York courts apply a "but for" analysis to this provision, holding that if none of the causes of action in an underlying action for which coverage is sought "could exist but for the existence of

11

the excluded activity or state of affairs, the insurer is under no obligation to defend the action." Scottsdale Indem. Co. v. Beckerman, 992 N.Y.S.2d 117, 121 (2d Dep't. 2014) (emphasis added); see also Mt. Vernon Fire Ins. Co. v. Creative Housing, Ltd., 88 N.Y.2d 347, 353 (1997); Beazley Ins. Co., 880 F.3d at 71.

The terms of the Habitability Exclusion could not be clearer, and they match the allegations of the Class Action Complaint "to a T." Thus, the Class Action Complaint alleges general and specific conduct that falls squarely within this exclusion. Indeed, each of the specific conditions set forth therein, including, for example, leaks, crack, holes and the lack of functioning heating and plumbing systems at Barbour Gardens, alone or together, allege a housing complex that is plainly uninhabitable, to the point where plaintiffs in the Class Action Complaint had to be, at great difficulty, relocated to other housing.

If the specific appalling conditions alleged were not enough to compel the conclusion that the Habitability Exclusion bars coverage, allegations regarding violations of housing laws are. Thus, the Class Action Complaint alleges that Plaintiffs' conduct amounts to violations of law that are specifically referred to in the Habitability Exclusion. In particular, the Class Action Complaint notes that Barbour Gardens is Section 8 housing, a specifically enumerated government-subsidized housing program, the violations of which are excluded from coverage. Plaintiffs' alleged violations of other laws, also unquestionably specifically excluded from coverage, include allegations of the laws and regulations of the Department of Housing and Urban Development ("HUD") (DE [1-1] ¶¶ 12, 27.)

There is no question but that all claims in the Class Action Complaint could not exist "but for" the existence of the uninhabitable condition of the Premises. The Habitability Exclusion therefore applies even if each claim is considered separately. While Count Three of the Class

Action Complaint alleges specifically a breach of the Warranty of Habitability, (DE [1-1] ¶¶ 53-57), each of the other causes of action rely on the same deplorable living conditions alleged to exist at Barbour Gardens. Thus, the Negligent Infliction of Emotional Harm alleged in Count Two relies on the same conduct described above to support a claim that the Barbour Gardens residents suffered emotional harm. The breach of lease alleged in Count Four relies on the Plaintiffs' failure to comply with rental agreements that required them to make necessary repairs. The same analysis applies to Count Five (Negligence), Count Six (Recklessness) and Count Seven (Unjust Enrichment). No count in the Class Action Complaint could exist but for allegations of inhabitability. Where, as here, the only possible interpretation of a claim for which coverage is sought falls "wholly within a policy exclusion" there is neither a duty to defend nor indemnify the policy holder. See Scottsdale Indem. Co., 992 N.Y.S.2d at 121 (citations omitted).

The Habitability Exclusion is exceedingly broad and must be construed in accord with its plain and unambiguous terms. The Court's "but for" analysis demonstrates that all claims exist only because of the alleged uninhabitability of Barbour Gardens. Plaintiffs' "but for" argument to the contrary tortures the language of the Habitability Exclusion into an imagined set of facts that are nowhere alleged in the Class Action Complaint. The claims in the Underlying Action are not based "in part" on claims of inhabitability, they are grounded entirely upon such an allegation.

The dispositive nature of the Habitability Exclusion requires that Burlington's motion for summary judgment be granted on this ground alone. Accordingly, the Court need not discuss any other arguments raised in either of the parties' motions. The Court nonetheless notes its rejection of Plaintiffs' attempt to create a question of fact based upon the deposition testimony of a Burlington representative. (DE [150-2] at 6.) That such a witness could not pinpoint which

specific allegation in the Class Action Complaint applied to Policy exclusions does nothing to defeat summary judgment. The law is clear. Application of an exclusion depends on the allegations in the claim for which coverage is sought – not on whether a deponent can recite those claims at their deposition. Additionally, to the extent that Plaintiffs rely on Burlington's testimony to support some vague claim of bad faith, that attempt also fails. No evidence developed during discovery here shows the "'gross disregard" of the insured's interest" necessary to even create an issue of fact as to any such argument. Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453-54 (1993). Plaintiffs utterly fail to show any such conduct on the part of Burlington. See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 624 (2d Cir. 2001) (finding difference of opinion in interpretation of insurance policy insufficient to show bad faith).

In sum, The Habitability Exclusion is a clear and unequivocal bar to coverage for all claims alleged in the Underlying Action. No claim therein could exist but for this dispositive exclusion to coverage. Accordingly, Burlington's motion for summary judgment should be granted and Plaintiffs' motion should be denied.

## RECOMMENDATION

Based on the foregoing, this Court respectfully recommends that Defendant Burlington's motion for summary judgment be granted and Plaintiffs' motion for summary judgment be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      May 28, 2024                                  /s/    Anne. Y. Shields
                                                            ANNE Y. SHIELDS
                                                            United States Magistrate Judge